Argued and submitted January 6, decision of the Court of Appeals affirmed in part
and reversed in part and case remanded to the Department of Insurance and Finance
for further proceedings April 14, 1994

## S-W FLOOR COVER SHOP,
*Respondent on Review,*

*v.*

## The Filings of the
## NATIONAL COUNCIL ON
## COMPENSATION INSURANCE,
*Respondent below,*

*and*

## SAIF CORPORATION,
*Petitioner on Review.*

## (DIF 90-10-009; CA A74356; SC S40585)

872 P2d 1

David L. Runner, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Bruce D. Smith, Medford, argued the cause for respondent on review.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This case requires the court to determine how the statutory definition of "independent contractor" found in ORS 670.600, enacted in 1989, has affected statutory provisions for determining when a person is subject to Oregon's workers' compensation law, ORS chapter 656.

SAIF Corporation, petitioner on review, asks this court to reverse the Court of Appeals' determination in this case that the legislative creation of a statutory definition of independent contractor replaced the judicially created "right to control" test for determining workers' compensation coverage. *See S-W Floor Cover Shop v. Natl. Council on Comp. Ins.*, 121 Or App 402, 407, 854 P2d 944 (1993) (so holding). For the reasons that follow, the decision of the Court of Appeals is affirmed in part and reversed in part. The case is remanded to the Department of Insurance and Finance (DIF) for further proceedings.[1]

This case arose in the context of an audit dispute between S-W Floor Cover Shop (S-W Floor) and its insurer, SAIF, regarding how high a premium S-W Floor was to be charged for its workers' compensation insurance coverage. During the disputed period, July 1988 through June 1990, S-W Floor used the services of three carpet installers at issue in this case. SAIF issued workers' compensation insurance policies for those periods and included, as part of the basis for the premiums that it charged, the amounts paid to those carpet installers, on the belief that the carpet installers were subject workers under the workers' compensation law. *See* ORS 656.005(28) (defining "worker," quoted in text *infra*); ORS 656.027 (who are "subject workers," quoted in text *infra*).

S-W Floor appealed to DIF, arguing that the carpet installers were not workers subject to assessment, because they were independent contractors. DIF determined that, under the judicially created tests to determine whether one was an independent contractor and not subject to the

---

[1] This department since has been renamed the Department of Consumer and Business Services, but will be referred to as DIF throughout this opinion, because that was its name at the time it issued the order in this case.

workers' compensation law,[2] the three carpet installers were covered by the workers' compensation law before October 3, 1989, but that, under the ORS 670.600 statutory definition that took effect after that date, two of the installers were independent contractors not covered by workers' compensation law, but one was covered. S-W Floor petitioned the Court of Appeals for judicial review, and SAIF cross-petitioned for review. The Court of Appeals affirmed in part and reversed in part, remanding the case to DIF. *S-W Floor Cover Shop v. Natl. Council on Comp. Ins., supra,* 121 Or App at 408.

SAIF sought review in this court of the portion of the Court of Appeals' decision pertaining to the period after October 3, 1989, arguing that the Court of Appeals misapplied the statutory definition of independent contractor found in ORS 670.600 in light of the provisions of ORS 656.005(28) (defining worker) and ORS 656.027 (listing exemptions for nonsubject workers). We allowed review to determine how the statutory definition of "independent contractor" and amendments to the workers' compensation law enacted in 1989 affect workers' compensation coverage.

In interpreting statutes, this court's task is to discern the intent of the legislature. ORS 174.020; *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610, 859 P2d 1143 (1993). The statutory text is the starting point and the best evidence of legislative intent. *Ibid.* The court also considers rules of statutory construction that bear directly on how to interpret the text. *Id.* at 611. The context also is considered; it includes other provisions of the same statute, as well as other related statutes. *Ibid.* In examining context, the court also considers relevant rules of statutory construction, such as the statutory mandate that, "where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all." ORS 174.010. Only if the intent of the legislature is unclear after consideration of the text and context of a statute does this court consider legislative history as evidence of the legislature's intent. *PGE v. Bureau of Labor and Industries, supra,* 317 Or at 611-12.

---

[2] *See* explanation of judicially created test, discussed in text *infra* at 621-22.

We turn to the text of the relevant statutes. ORS 670.600, relating to "independent contractors," was enacted in 1989, *see* Or Laws 1989, ch 762, § 1, and provides:

"As used in various provisions of ORS chapters 316 [revenue code], 656 [workers' compensation law], 657 [unemployment law] and 701 [construction contractors law], an individual or business entity that performs labor or services for remuneration shall be considered to perform the labor or services as an 'independent contractor' if the standards of this section are met:

"(1) The individual or business entity providing the labor or services is free from direction and control over the means and manner of providing the labor or services, subject only to the right of the person for whom the labor or services are provided to specify the desired results;

"(2) The individual or business entity providing labor or services is responsible for obtaining all assumed business registrations or professional occupation licenses required by state law or local government ordinances for the individual or business entity to conduct the business;

"(3) The individual or business entity providing labor or services furnishes the tools or equipment necessary for performance of the contracted labor or services;

"(4) The individual or business entity providing labor or services has the authority to hire and fire employees to perform the labor or services;

"(5) Payment for the labor or services is made upon completion of the performance of specific portions of the project or is made on the basis of an annual or periodic retainer;

"(6) The individual or business entity providing labor or services is registered under ORS chapter 701, if the individual or business entity provides labor or services for which such registration is required;

"(7) Federal and state income tax returns in the name of the business or a business Schedule C or farm Schedule F as part of the personal income tax return were filed for the previous year if the individual or business entity performed labor or services as an independent contractor in the previous year; and

"(8) The individual or business entity represents to the public that the labor or services are to be provided by an

independently established business. Except when an individual or business entity files a Schedule F as part of the personal income tax returns and the individual or business entity performs farm labor or services that are reportable on Schedule C, an individual or business entity is considered to be engaged in an independently established business when four or more of the following circumstances exist:

"(a)   The labor or services are primarily carried out at a location that is separate from the residence of an individual who performs the labor or services, or are primarily carried out in a specific portion of the residence, which portion is set aside as the location of the business;

"(b)   Commercial advertising or business cards as is customary in operating similar businesses are purchased for the business, or the individual or business entity has a trade association membership;

"(c)   Telephone listing and service are used for the business that is separate from the personal residence listing and service used by an individual who performs the labor or services;

"(d)   Labor or services are performed only pursuant to written contracts;

"(e)   Labor or services are performed for two or more different persons within a period of one year; or

"(f)   The individual or business entity assumes financial responsibility for defective workmanship or for service not provided as evidenced by the ownership of performance bonds, warranties, errors and omission insurance or liability insurance relating to the labor or services to be provided."[3]

That definition, in and of itself, does not specify how it affects workers' compensation coverage for independent contractors.

ORS 656.005, the definition section of the workers' compensation law, provides in part:

"(28)   'Worker' means any person, including a minor whether lawfully or unlawfully employed, who engages to furnish services for a remuneration, subject to the direction and control of an employer and includes salaried, elected and

---

[3] This statute was codified as ORS 701.025 at the time of the DIF order in this case; it is currently codified as ORS 670.600 and is referred to as such throughout this opinion.

appointed officials of the state, state agencies, counties, cities, school districts and other public corporations, but does not include any person whose services are performed as an inmate or ward of a state institution or as part of the eligibility requirements for a general or public assistance grant.

"(29) 'Independent contractor' has the meaning for that term provided in ORS 670.600."[4]

ORS 656.027 provides that all "workers" are subject to ORS chapter 656, unless they qualify as "nonsubject workers." Under the 1989 amendments to ORS 656.027, certain categories of exempt workers must qualify as "independent contractors" in order to be "nonsubject workers":

"All workers are subject to this chapter except those nonsubject workers described in the following subsections:

"* * * * *

"(7) Sole proprietors. When labor or services are performed under contract, the sole proprietor must qualify as an independent contractor.

"(8) Partners who are not engaged in work performed in direct connection with the construction, alteration, repair, improvement, moving or demolition of an improvement on real property or appurtenances thereto. When labor or services are performed under contract, the partnership must qualify as an independent contractor.

"(9) Corporate officers who are directors of the corporation and who have a substantial ownership interest in the corporation subject to the following limitations:

"* * * * *

"(c) When labor or services are performed under contract, the corporation must qualify as an independent contractor." ORS 656.027.[5]

---

[4] Although the definition of "worker" currently found in subsection (28) has been a part of the law in essentially the same form since 1975, subsection (29) was added at the same time that ORS 670.600 was enacted. *See* Or Laws 1975, ch 556 (amending and recodifying definitions formerly found in ORS 656.002); Or Laws 1989, ch 762, § 4.

[5] Before the 1989 amendments, the statute quoted above in the text provided in part:

"All workers are subject to ORS 656.001 to 656.794 except those nonsubject workers described in the following subsections:

"* * * * *

Before the 1989 amendments quoted above, the term "independent contractor" was neither used nor defined in the workers' compensation statutes. However, a substantial body of judicially created law had developed, interpreting the definition of "worker" currently found in ORS 656.005(28) and recognizing that persons who met certain judicially created tests for determining whether they were "independent contractors" were not "workers" covered by the workers' compensation law. "Independent contractor" and "worker" were mutually exclusive terms for purposes of determining workers' compensation coverage. In *Woody v. Waibel*, 276 Or 189, 192, 554 P2d 492 (1976), this court stated:

> "The Workmen's Compensation Act, which is applicable only to the relationship of master and servant, is predicated upon the assumption that it is possible in every case for the courts to distinguish between a servant and an independent contractor."

*See also Landberg v. State Industrial Acc. Com.*, 107 Or 498, 501-02, 215 P 594 (1923) (right to recovery under workers' compensation law was dependent on establishing that plaintiff was a "workman" and not an "independent contractor").

In *Woody v. Waibel, supra*, this court quoted the definition of "workman" from ORS 656.005(28), which included the phrase "subject to the direction and control of an employer," and noted:

> "[I]t is clear that by express provisions of the statute [that] control is an essential ingredient in the test for determining who is a servant within the meaning of the Workmen's Compensation Act." 276 Or at 196 (footnote omitted).

---

"(7) Sole proprietors.

"(8) Partners who are not engaged in work performed in direct connection with the construction, alteration, repair, improvement, moving or demolition of an improvement on real property or appurtenances thereto.

"(9) A corporate officer who is also a director of the corporation and has a substantial ownership interest in the corporation, regardless of the nature of the work performed by such officer. However, if the activities of the corporation are conducted on land that receives farm use tax assessment pursuant to ORS 215.203 and ORS chapter 308, corporate officer includes all individuals identified as directors in the corporate bylaws, regardless of ownership interest, and who are members of the same family, whether related by blood, marriage or adoption." ORS 656.027 (1987).

The test for determining "control" in the workers' compensation context "is based not on the actual exercise of control by the employer, but on the right to control." *Great American Ins. v. General Ins.*, 257 Or 62, 66, 475 P2d 415 (1970) (citing cases). Factors considered by the courts in determining whether a "right to control" establishes an employment relationship have included, for example: whether the employer retains the right to control the details of the method of performance, *id.* at 68; the extent of the employer's control over work schedules, *Woody v. Waibel, supra*, 276 Or at 192 n 2; and whether the employer has power to discharge the person without liability for breach of contract, *Harris v. State Ind. Acc. Comm.*, 191 Or 254, 269, 230 P2d 175 (1951). Payment of wages is also a factor, *see Whitlock v. State Ind. Acc. Com.*, 233 Or 166, 170, 377 P2d 148 (1962), although it is not considered decisive "where it is shown that the employee was actually under the control of another person during the progress of the work." *Harris v. State Ind. Acc. Comm., supra*, 191 Or at 271 (citing cases).[6]

This court's interpretation of ORS 656.005(28) became part of that statute. *See Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992) (when court interprets a statute, that interpretation becomes a part of the statute as if written into it at the time of its enactment). ORS 656.005(28) has not been amended. Our task is to determine the effect of the 1989 addition of ORS 656.005(29) and ORS 670.600, and the 1989 amendments to ORS 656.027(7) to (9).

It is logical that a determination must be made under ORS 656.005(28) whether one is a "worker" before it can be determined if the *worker* is "nonsubject" under ORS 656.027. SAIF asserts, however, that the proper way to interpret those statutes together is first to determine if one meets all of the criteria for a statutory "independent contractor" under ORS 670.600. If the answer is "yes," then the

---

[6] Where the relationship between the parties cannot be established by the "right to control" test, it is permissible to turn to the judicially created "nature of the work" test to determine if an employment relationship exists. *See Woody v. Waibel*, 276 Or 189, 197-98, 554 P2d 492 (1976) (so stating). Although DIF based part of its decision in the present case on the "nature of the work" of the carpet installers, that part of the decision related only to the portion of the audit period before the 1989 amendments went into effect and is not at issue before this court. Therefore, we do not discuss the "nature of the work" test.

inquiry is ended, and the statutory independent contractor is not subject to the workers' compensation law. If the answer is "no," *then* a determination must be made under ORS 656.005(28) as to whether one is a "worker." The later determination would incorporate the judicially developed "right to control" test, described above. If one is not a "worker," then one is not subject to the workers' compensation law. If one is a "worker," then a determination is made under ORS 656.027 as to whether one is a "nonsubject worker."

The problem with SAIF's proposed approach is that it overlooks the overall structure of the workers' compensation statutes. The statutory definition of independent contractor, in and of itself, does not alter the internal logic of the workers' compensation law, which requires, as an initial matter, a determination of whether one is a "worker." SAIF's approach fails to put the statutory definition found in ORS 670.600 into the context of the workers' compensation law.

S-W Floor proposes that, first, a determination be made as to whether one is a "worker" under ORS 656.005(28), using the judicially developed "right to control" test. If one is a "worker" under ORS 656.005(28), then a determination is made as to whether one is a "nonsubject worker" under ORS 656.027. Only if there is an issue about whether one is a "nonsubject worker" under the provisions of ORS 656.027(7), (8), or (9) does a determination need to be made as to whether one is a statutory "independent contractor" as defined in ORS 670.600. We are satisfied that that is a logical progression through the statutes.

There is a further interpretive issue to be resolved, however. ORS 656.005(28) defines a "worker" as a person who is "subject to the *direction and control* of an employer," whereas ORS 670.600 provides that an "independent contractor" "is free from *direction and control* over the means and manner of providing the labor or services, subject only to the right of the person for whom the labor or services are provided to specify the desired results." (Emphasis added.) If "direction and control" means the same thing in both statutes, then all statutory independent contractors, who by definition are not subject to "direction and control" pursuant to ORS 670.600(1), cannot be "workers" under ORS

656.005(28) because of the lack of "direction and control." This brings us to a dilemma: if statutory independent contractors can never be "workers" for purposes of workers' compensation laws in the first place, then why did the legislature refer to statutory independent contractors in the "nonsubject worker" statute?

S-W Floor posits (and DIF and the Court of Appeals agreed in this case) that the dilemma can be avoided by concluding that "direction and control" do not mean the same thing in both ORS 670.600(1) and ORS 656.005(28). *See, e.g., Enertrol Power Monitoring Corp. v. State of Oregon*, 314 Or 78, 84, 836 P2d 123 (1992) (use of a term in one portion of the Oregon Revised Statutes does not necessarily control the meaning of the same term in another portion of the statutes). S-W Floor argues that the "direction and control" provision in ORS 656.005(28) still incorporates the judicially created "right to control" test to make the initial determination of who is a "worker," but that a different test, an "actual control" test, should determine whether one is "free from direction and control" for purposes of ORS 670.600. Under S-W Floor's proposed interpretation, one might be a "worker" subject to direction and control (right to control) pursuant to ORS 656.005(28), but still qualify as a nonsubject worker under 656.027(7), (8), or (9) as an independent contractor who is free from direction and control (actual control). For the reasons that follow, we reject S-W Floor's proposed interpretation.

Although that proposed solution would give meaning to each of the relevant statutes, we are unable to find textual or contextual support for the proposition that "direction and control" has different meanings in ORS 670.600(1) and ORS 656.005(28). In both statutes, the term is used to describe a working relationship between two parties. The text and context of the statutes do not reveal whether the legislature intended the term to have different meanings in the two statutes. We therefore turn to the legislative history of the 1989 amendments for evidence of how the legislature intended these statutes to work together. *See PGE v. Bureau of Labor and Industries, supra*, 317 Or at 611-12 (describing methodology).

The "independent contractor" statutes originated in a Joint Interim Committee on Labor, Subcommittee on Independent Contractors, which convened in 1988 to develop a statutory definition for "independent contractor" that would apply, not only to workers' compensation law, but also to unemployment compensation law, tax law, and construction contractor law. The subcommittee's draft of this legislation contained the provision that an independent contractor must be "free from direction and control over the means and manner of providing the labor or services." *See* Joint Interim Committee on Labor, Subcommittee on Independent Contractors, August 16, 1988, Exhibit A.

The Joint Interim Committee's draft of this legislation was introduced in 1989 as House Bill 2320. The substance of the entire bill can be summarized as follows:

The revenue code, ORS chapter 316, was changed to amend the definition of "wages" to exclude remuneration "[f]or services performed by an independent contractor, as that term is defined in section 1 of this 1989 Act."

The unemployment law, ORS chapter 657, was amended to provide:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the assistant director that:

"(a) Such individual is an independent contractor, as that term is defined in [section 1 of this 1989 Act.]" ORS 657.040(1).[7]

ORS chapter 701, governing construction contractors, was amended to incorporate the new statutory definition of "independent contractor" into the definition of "builder." ORS 701.005(2)(d); Or Laws 1989, ch 762, § 7.

[7] At the same time, numerous criteria for an exemption for "independently established businesses," such as having two or more contracts, having separate telephone services, having business cards, engaging in commercial advertising, and providing tools and equipment necessary for carrying out contracts, were eliminated from this section. ORS 657.040 (1987); Or Laws 1989, ch 762, § 6. *Cf.* ORS 670.600(3), (8); Or Laws 1989, ch 732 § 1 (incorporating similar provisions into new statutory definition of independent contractor).

As noted above, the workers' compensation law was amended to incorporate the new independent contractor definition into the definition section of the workers' compensation law, *see* ORS 656.005(29), set forth above in text. Or Laws 1989, ch 762, § 3. Section 4 of the 1989 act added the term "independent contractor" to portions of the "nonsubject worker" statute, ORS 656.027(7) to (9), set forth above in text.

HB 2320 was introduced into the House at the request of the Joint Interim Committee on Labor and referred to the House Committee on Labor. The House Committee on Labor, and later the Senate Committee on Labor, received testimony of representatives from the state agencies directly affected by the new independent contractor provision. The first person to testify in favor of this bill before the committees in both the House and the Senate was Larry Young, manager for the compliance division of the Workers' Compensation Division of DIF, who had participated in the joint interim subcommittee that drafted the bill. In the House Committee on Labor, he was asked to explain the results of the interim committee's work. He offered the following response:

"MR. YOUNG: The Workers' Compensation Division supports House Bill 2320A regarding independent contractors. The proposal in House Bill 2320 clarifies one of the most confusing areas of workers' compensation, not only for those of us working in the system, but also for Oregon employers. Before expanding upon the reasons we support this bill, it may be beneficial to review the statutory coverage requirements and the impact they have on the system.

"By statute (ORS 656.017) all employers who hire 'subject workers' are required to provide workers' compensation insurance for those workers. All workers are 'subject workers' except for those workers deemed as non-subject under ORS 656.027. * * * Simply put, employers are not required to provide coverage for any workers listed in 656.027.

"* * * * *

"You will note in ORS 656.027 that 'independent contractors' are not listed, so they are subject workers unless they are 'sole proprietors,' 'partners,' 'corporate officers' or any of the other employments listed there. To determine

when they are not subject requires the use of case law definitions. This is confusing and contributes to misunderstanding and abuse. There are situations where, in order to avoid premium payments, employers claim persons working for them are independent contractors. At the same time, there are employers who do not have coverage because they believe they only have independent contractors under contract when they actually have employees. There are also many employers who are covered but do not pay premiums on many jobs they believe are being done by independent contractors, only to end up paying unexpected premium as a result of a premium audit.

"House Bill 2320A provides a clear definition of 'independent contractor' and the conditions under which they are or are not subject to the Workers' Compensation Law. This will greatly assist investigators and auditors, as well as employers, in determining when individuals or business entities are in compliance with or [in] violation of the law. Also, when such determinations are appealed, those reviewing the issue will be assisted by having a specific statutory definition.

"House Bill 2320A also makes the definition of 'independent contractor' apply to the laws of employment, revenue and Builder's Board as well as workers' compensation. This change will contribute greatly to eliminating confusion and unintentional violations by employers. As an example, since the Employment Division laws and our laws are not the same, on many occasions employers have not provided workers' compensation coverage because the worker was not subject to unemployment tax. With House Bill 2320A, if they are exempt under one, they'll be exempt under another. Also, with House Bill 2320A, if one of the other agencies determines noncompliance in this area, we should be able to issue our own order of noncompliance without conducting another investigation." House Committee on Labor, January 25, 1989, Tape 13, Side A; House Committee on Labor, January 25, 1989, Exhibit C.[8]

Later during the same committee meeting, a representative questioned one of the witnesses who was testifying against the bill: "You're not objecting to the thrust of this legislation, which is to come up with a single scheme that

---

[8] The substance of this oral testimony, as well as the accompanying written testimony, was later presented to the Senate Committee on Labor. *See* Minutes, Senate Committee on Labor, June 7, 1989, at 4-5, and Exhibit B (so demonstrating).

would apply across the board in commerce?" House Committee on Labor, January 25, 1989, Tape 13, Side B.

That legislative history strongly suggests that the primary purpose of House Bill 2320 was to achieve uniformity in who qualifies as an independent contractor, so that one who is an independent contractor for purposes of one of the four laws cited above would also be an independent contractor for purposes of the other three laws.

The legislative history also answers the question whether the "direction and control" test incorporated into the new statutory definition is the same as, or different from, the "direction and control" test (the judicially created "right to control" test) under ORS 656.005(28). The Joint Interim Committee on Labor, Subcommittee on Independent Contractors, discussed the "direction and control" phrase in the new statutory definition:

"SENATOR HOUCK: [Speaking to Fred Van Natta, a witness representing the State Homebuilders' Association] I'm curious of your reaction to [the provision containing the 'direction and control' language] because it's one of the cornerstones of, you know, the construction industry here, is the 'free from direction and control over the means,' and I don't quite understand your either endorsement or nonresistance to that. * * *

"REPRESENTATIVE SHIPRACK: You know, *this is an old, old test again, a common law test.*

"SENATOR HOUCK: Well, I know it is.

"* * * * *

"SENATOR HOUCK: Well, I guess my concern is to get Fred's reaction to it here. *This is not a new definition* or new issue. But it's certainly one that has been at the top of the list of a lot of people's minds to the care, custody, control issue.

"MR. VAN NATTA: If I may, Mr. Chairman.

"REPRESENTATIVE SHIPRACK: Go ahead, yes.

"MR. VAN NATTA: I didn't quarrel with that in part because *it's a traditional language* that is really key to the issue and *it's historically been interpreted.*

"* * * * *

"SENATOR HOUCK: Okay, you know one of the reasons I wanted to have this discussion,

"REPRESENTATIVE DWYER: *For the record —*

"SENATOR HOUCK: *I wanted to put it on the record.* I'm not uncomfortable with the way the thing has gone. *I just don't want to, after we overhaul it, to have that issue be challenged here. As long as we all understand it that there is a traditional history behind this clause, I feel comfortable with it.* As long as this goes on the record, okay?" Joint Interim Committee on Labor, Subcommittee on Independent Contractors, August 16, 1988, Tape 1, Side B, Tape 2, Side B (emphasis added).

That discussion suggests that the subcommittee in which the phrase "direction and control" originated intended the body of judicially created law interpreting "direction and control" under ORS 656.005(28) to apply to the new definition of "independent contractor."

Further support for the conclusion that the same judicially created "direction and control" test was intended to be used in the new definition of independent contractor can be found in statements made by Mr. Young of DIF to the Senate Committee on Labor when that committee first considered HB 2320:

"MR. YOUNG: Section 1 is the definition of an independent contractor, and it provides that, and I might say, Mr. Chairman, that *it basically uses the law definition of independent contractor that the courts have used throughout the years* for all the respective agencies — definition of independent contractor. It provides that the individual/business entity must be *free from the direction and control * * *.*" Senate Committee on Labor, June 7, 1989, Tape 171, Side A (emphasis added).

Other comments made during the Senate Committee on Labor's meetings also shed light on the legislative intent behind this bill:

"MR. DERBY: [Insurance agent, witness in opposition to bill] I'll make a general statement — *. I don't know anybody that is not under direction and control.* And this is brought up —

"* * * * *

"SENATOR HOUCK: *There's case law on that issue. That one has a lot of case law.* Care, custody, control.

"* * * * *

"MR. DERBY:   * * * If at any time a contractor accepts any direction or control, one time, he is no longer an independent contractor.   * * * I think we've got a real can of worms.

"SENATOR KERANS:   Well, I wouldn't torture the direction and control. I just wouldn't torture that too much.

"MR. DERBY:   Okay, well, you asked me to address this.

"SENATOR KERANS:   Yeah, that's just for your edification — I hope, the chair hopes, it's something that's the least of the problems, because I think we all, *I think virtually everybody involved in the debate over independent contractor can look to what we know to be a pretty definitive body of case law and precedent about what supervision and control is.*" Senate Committee on Labor, June 7, 1989, Tape 174, Side A (emphasis added).

Those excerpts, as well as a great deal of discussion in committee not reproduced in this opinion, make it clear that the committee considered at length the "direction and control" issue and intended the case law interpreting that phrase as used in ORS 656.005(28) to apply to that phrase as used in the independent contractor definition found in ORS 670.600.

We therefore are unable to agree with S-W Floor's suggestion, and the Court of Appeals and DIF's conclusions, that the phrase "direction and control" in the ORS 670.600 definition refers to a different "actual control" test rather than the judicially created "right to control" test referred to by the legislators, which historically has been applied in conjunction with ORS 656.005(28). We therefore conclude that the same "direction and control" test appears in both ORS 656.005(28) and ORS 670.600.

■   Thus, we conclude that the statutes work together in the following manner. A determination first is made as to whether one is a "worker" before a determination is made as to whether that "worker" is a "nonsubject" worker pursuant to one of the exemptions of ORS 656.027. The initial determination of whether one is a "worker" under ORS 656.005(28) continues to incorporate the judicially created "right to control" test. One who is not a "worker" under that test is not subject to workers' compensation coverage, and the inquiry ends. The "nonsubject worker" provisions of ORS 656.027 never come into play. If the initial determination made under ORS 656.005(28) is that one *is* a worker because

one is subject to direction and control under the judicially created "right to control" test, then one goes on to determine under ORS 656.027 whether the worker is "nonsubject" under one of the exceptions of that statute. We recognize that this approach makes the 1989 amendments to ORS 656.027(7) to (9) unnecessary because independent contractors will never be "nonsubject workers"; however, the alternative constructions would require this court either to insert into ORS 670.600 what has been omitted (a workers' compensation exclusion) or to omit what has been inserted (the judicially created right to control test found in ORS 656.005(28)).

■ In the present case, DIF used only ORS 670.600 in its determination of whether the installers were covered by the workers' compensation law after October 3, 1989, and interpreted the "direction and control" language in that statute as requiring an "actual control" rather than a "right to control" test. Because we have determined that its method of analysis was incorrect, we remand this case to DIF for reconsideration under the correct legal standard.

The decision of the Court of Appeals is affirmed in part and reversed in part. The case is remanded to the Department of Insurance and Finance for further proceedings.