Argued and submitted August 13, 2008, remanded for reconsideration
April 29, 2009

Larry LENON,
*Petitioner,*

*v.*

PUBLIC EMPLOYEES RETIREMENT BOARD,
*Respondent.*

Public Employees Retirement Board
050886; A134317

206 P3d 1165

Michael C. Petersen argued the cause for petitioner. With him on the briefs was Heltzel, Upjohn, Williams, Yandell, Roth, Smith & Petersen, P.C.

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Schuman, Judge.

LANDAU, P. J.

Schuman, J., dissenting.

## LANDAU, P. J.

At issue in this retirement benefits case is whether petitioner, who for approximately 14 years opted out of his employer's retirement plan, is nevertheless entitled to a benefit under the Public Employees Retirement System (PERS) for unused sick leave accumulated during that 14-year period because his employer later joined PERS and he was a member of PERS at the time that he retired. The Public Employees Retirement Board (PERB) issued an order denying petitioner credit for the unused sick leave that he had accumulated while he had opted out of his employer's retirement plan. Petitioner seeks judicial review, arguing that PERB's order cannot be reconciled with applicable statutes and the 1991 contract that integrated his employer's retirement plan into PERS. We conclude that PERB did err in reading the applicable statutes, although not in the way that petitioner contends. We therefore remand for reconsideration.

The relevant facts are undisputed. Petitioner began working as a programming analyst for the Marion/Salem Data Center in 1973. In July 1974, he began contributing to the City of Salem's retirement plan. Three months later, in October 1974, he discontinued his contributions. He did not contribute to the city's plan for the next 14 years.

In January 1989, when the city began making employer contributions, petitioner resumed his participation in the city's plan. Two years later, in January 1991, the city integrated its retirement plan into PERS, as authorized by *former* ORS 237.051 (1989), *renumbered as* ORS 238.680 (2001).[1] Paragraph 6 of the integration agreement provided:

---

[1] All references to statutes codified in *former* ORS chapter 237 are to the 1989 versions that were in effect at the time the city and PERB executed the integration contract. *Former* ORS 237.051 provided, in part:

"(1) Employees * * * whose membership in a previously established retirement system excludes them from membership in the system established by this chapter may apply to [PERB] in writing for the former system to be integrated into the latter and for them to be allowed to become members of the latter. Whenever two-thirds of them and their employer, through its governing body, so apply, the board:

"* * * * *

"(b) May upon such terms as are set forth in a contract between the board and the employer, integrate the previously established system into the system established by this chapter.

"The Data Center extends the use of accumulated unused sick leave to increase benefits in accordance with [*former*] ORS 237.153 for those persons receiving a benefit under [*former*] ORS 237.001 through ORS 237.320, for all employe[e]s."

Petitioner continued to work for the Data Center for the next ten years. He retired effective October 2001. In May 2002, he obtained from PERS an estimate of his retirement benefits, which indicated that he had a total of 2,118 hours of accumulated unused sick leave. Petitioner applied for retirement benefits in June 2002 and began receiving benefits as of July 1, 2002.

In May 2003, petitioner contested his monthly benefit amount on a basis that is not at issue here. During an audit of his benefit amount, PERS determined that it had erroneously credited him with 2,118 hours of accumulated unused sick leave. PERS concluded that petitioner was not entitled to credit for unused sick leave that he had accumulated during the approximately 14-year period before integration in which he did not contribute to the city's retirement plan, and that he therefore was entitled to credit for only 1,248 hours. PERS recalculated petitioner's retirement benefit, resulting in a reduction of approximately $79 per month.

Petitioner requested a hearing on the matter. An administrative law judge (ALJ) conducted the hearing and issued a proposed order, which concluded that petitioner was entitled to credit for all 2,118 hours of accumulated unused sick leave. In its final order, PERB rejected the ALJ's conclusion and affirmed that petitioner was entitled to credit for only 1,248 hours. PERB reasoned that, under ORS 238.350, which sets out standards for the use of accumulated unused sick leave to increase retirement benefits, an employee is entitled to credit for only such leave as was accumulated while the employee was an "active member" of PERS. PERB determined that petitioner was not an active member during

"(2) Nothing in [this chapter] nor any action taken pursuant thereto shall reduce or impair the benefits which employees who are receiving benefits from a retirement system integrated with the system provided by this chapter would have received had the integration not been effected."

The current version of that statute, ORS 238.680, is substantively identical.

the approximately 14 years he did not contribute to the city's retirement plan (and the city did not contribute on his behalf) for two reasons: first, because ORS 238.005(12)(b) defines an "active member" as one who has a "participating"—that is, contributing—employer; and, second, because, under ORS 238.200, an active member is an employee who is making contributions. PERB further concluded that the 1991 contract between the city and PERB that integrated the city's plan into PERS did not provide any rights or benefits to employees beyond those provided in the PERS statutes.

On judicial review, petitioner argues that PERB erred under both the relevant statutes and the integration contract in crediting him for the lesser amount of accumulated unused sick leave. According to petitioner, consistently with ORS 238.350(1), he was an active member throughout the disputed time period because he was "presently employed" by the city within the meaning of ORS 238.005(12)(b). He also argues that, consistently with ORS 238.350(1), the proper inquiry is whether he was an active member of PERS at the time he retired. He further notes that the legislature refers throughout ORS chapter 238 to "creditable service"—time during which an active member is employed by a participating employer and contributions are being made to PERS on the member's behalf, ORS 238.005(5)—but does not do so in ORS 238.350, pertaining to unused sick leave; petitioner argues that the legislature's omission of that term from the latter statute must be deemed to be deliberate and demonstrates that the unused sick leave that he accumulated while he was not a contributing employee nevertheless is relevant to the calculation of his benefit amount.

As to the integration contract, petitioner relies on the fact that paragraph 6, pertaining to unused sick leave, "extends" that benefit to "all" Data Center employees; and on the contrast between the provision in the contract providing for the calculation of creditable service—which is based on "years and months of participation" in the city's retirement plan—and paragraph 6, which contains no reference to participation.

In response, PERB reasons that, consistently with ORS 238.350, petitioner is not entitled to sick leave accumulated while he was not an "active member" of PERS. It further asserts that the integration contract does not afford petitioner any greater unused sick leave benefits than those to which he was entitled under the PERS statutes. PERB argues that to conclude otherwise would expose the system to an unfunded liability, that is, the obligation to pay benefits for which neither the employee nor the employer had made any contribution.

In reply, petitioner asserts that PERB's argument on judicial review—that petitioner is not entitled to credit for any unused sick leave accumulated before integration—differs from its reasoning below and that this court should reject it on that basis. Petitioner also reiterates that the integration contract unambiguously extends the sick leave benefit to all employees. He further argues that, even if the language of the contract is ambiguous, extrinsic evidence—the benefit estimates that he received from PERB, which reflected 2,118 hours of unused sick leave—supports his construction. Petitioner also relies on the principle of contract construction that a provision be construed most favorably to the party in whose favor the provision was drafted and the principle, embodied in ORS 238.680(2), that a contract of integration be construed so as not to reduce employee benefits. Finally, petitioner urges us to disregard what he characterizes as PERB's "newly raised" argument pertaining to an unfunded liability.

Because there are no disputed facts, we review PERB's order in this case for substantial reason and errors of law. ORS 183.482(8)(a), (b); *Richardson v. DMV*, 213 Or App 18, 29, 159 P3d 1227 (2007), *rev den*, 344 Or 43 (2008). Specifically, we consider whether petitioner is entitled to the disputed unused sick leave credit under the relevant provision—paragraph 6—of the contract of integration. And, to the extent that the meaning of paragraph 6 depends on the effect of an incorporated statute—*former* ORS 237.153, now codified at ORS 238.350—we apply to that statute the rules of statutory interpretation set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). *Cf. Oregon Restaurant Services v. Oregon State Lottery*, 199 Or

App 545, 560, 112 P3d 398, *rev den*, 339 Or 406 (2005) (when a contract incorporates by reference the terms of an administrative rule, the court applies rules of interpretation that apply to administrative rules) (citing *Coats v. ODOT*, 188 Or App 147, 151, 71 P3d 172 (2003), *rev den*, 336 Or 509 (2004)).

Again, paragraph 6 of the contract of integration provides:

> "The Data Center extends the use of accumulated unused sick leave to increase benefits in accordance with [*former*] ORS 237.153 for those persons receiving a benefit under [*former*] ORS 237.001 through ORS 327.320, for all employe[e]s."

In turn, *former* ORS 237.153 provided, in part:

> "(1)(a)   Upon the request by a public employer that its employees be compensated for accumulated unused sick leave with pay in the form of increased retirement benefits upon service or disability retirement, the board shall establish a procedure for adding to the gross amount of salary used in determining final average salary the monetary value of one-half of the accumulated unused sick leave with pay of each retiring employee of the requesting public employer and shall establish benefits of the retiring employee on the basis of a final average salary reflecting that addition.
>
> "* * * * *
>
> "(c)   For the purpose of this subsection, accumulated unused sick leave with pay includes unused sick leave with pay accumulated by an employee member of the system while in the service of any public employer participating in the system that has the request described in paragraph (a) of this subsection in effect at the time of the member's separation from the service of the employer, whether that employer is or is not the employer of the member at the time of the member's retirement."

The current versions of the quoted provisions, ORS 238.350(1)(a) and (c), differ in only one respect: in place of the term "employee member" in *former* ORS 237.153(1)(c), ORS 238.350(1)(c) uses the term "active member."

■   Because it is central to the meaning of paragraph 6, we begin with the proper construction of the statute that it

incorporates, *former* ORS 237.153. *See Oregon Restaurant Services*, 199 Or App at 561 (court first determined meaning of rule incorporated into contract). By its terms, *former* ORS 237.153(1) applied only to unused sick leave that was accumulated "by an employee *member* of the system *while* in the service of any public employer participating in the system." Although the statute itself does not expressly define what is meant by the term "member," context makes clear that it refers to a member of PERS. *See, e.g., former* ORS 237.011 (no person may become "a member of the system" unless the person is in the service of a participating employer); ORS 238.005(12) (defining "member" as "a person who has established membership in the system," *i.e.*, PERS).[2] Thus, the statute applies only to sick leave that was accumulated by an employee member of PERS *while* in the service of an employer participating in PERS. It does not apply to sick leave that was accumulated while an employee worked for someone other than a participating employer.

Confirming that reading of the statute is the fact that, under the integration statutes themselves—*former* ORS 237.051(1) and ORS 238.680(1)—employees "become" PERS "members" only upon integration. If a worker does not become a member until after integration, we do not understand how it is possible for a worker to earn benefits under *former* ORS 237.153(1) for periods of employment before integration, that is, before the worker became a "member," when that statute expressly provides that it applies to benefits accumulated while a member.

With the foregoing construction of the statute in mind, we turn to the construction of paragraph 6 of the integration contract, which "extends the use of accumulated unused sick leave to increase benefits *in accordance with*" that statute. In ordinary parlance, "accordance" refers to agreement or harmony. *See Webster's Third New Int'l Dictionary* 12 (unabridged ed 2002) (defining "accordance" as "AGREEMENT, ACCORD—now used chiefly in the phrase

---

[2] For statutes making clear that references to "the system" mean PERS, *see, e.g., former* ORS 237.005 (referring to the integration of a "similar system" into "this system," that is, the one "hereby * * * established," which "shall be known as" PERS); *former* ORS 237.051 (providing for integration of "previously established retirement system" into "the system established by this chapter").

*in accordance with*" and defining "accord" in part as "to bring into agreement : RECONCILE, HARMONIZE"). In the law, the term is ordinarily used in a more narrow sense of conformity or compliance. *See, e.g.*, Bryan A. Garner, *A Dictionary of Modern Legal Usage* 14 (2d ed 1995) ("To be *in accordance with* is to be in conformity or compliance."). It is commonly used synonymously with "pursuant to." *Black's Law Dictionary* 1272 (8th ed 1999) (defining "pursuant to" as "[i]n compliance with; in accordance with").

■     Thus, paragraph 6 extends the use of accumulated unused sick leave "in accordance with"—that is, in agreement, conformity, or compliance with or pursuant to—the statute, which we have just noted applies only to sick leave that was accumulated while a PERS member employee worked for an employer participating in PERS. The integration contract, in other words, does not retroactively confer benefits on individuals who were not members at the time the benefits were earned. Doing so would contravene the provision plainly dictating that the benefits are extended "in accordance with" *former* ORS 237.153.

Petitioner insists that paragraph 6 does retroactively confer the benefit of credit for unused sick leave accumulated even before the Data Center's integration based on the provision in the integration agreement that "extends" unused sick leave benefits to "all" Data Center employees. We remain unpersuaded. To begin with, petitioner's argument ignores the effect of the "in accordance with" phrasing that we just mentioned; whatever paragraph 6 "extends" to "all" employees must be "in accordance with" the statute, which provides that those benefits must be earned by an employee member of PERS while employed by a participating employer.

Apart from that, the verb "extend" means "to make available." *Webster's* at 804. The use of the present tense of that verb, combined with the absence of any indication of retroactive effect, suggests that the parties intended the act of extension to be a prospective one. In addition, paragraph 6 refers to persons "receiving a benefit under [*former*] ORS 237.001 through ORS 237.320." The present participle

"receiving" also lacks any inherently retroactive or constructive effect.[3] Moreover, it is noteworthy that paragraph 6 expressly refers to "persons receiving a benefit under" the PERS retirement system itself, and not to "persons receiving a benefit under" the preintegration system or both systems. Where the contract expressly refers to the city's previous plan in several other provisions of the contract, the reference in paragraph 6 to only *former* ORS 237.001 through 237.320 strongly suggests that the relevant time period is the time after integration.

As we have noted, petitioner also relies on the fact that, under the integration contract, only time during which an employee participated in the city's plan counts as creditable service, whereas paragraph 6—relating to unused sick leave—does not contain such a limitation. That difference in phrasing, however, cannot reasonably justify ignoring the effect of the express incorporation into paragraph 6 of *former* ORS 237.153, which establishes the relevant requirements for crediting unused sick leave.

In any event, the portion of the contract establishing entitlement to credit for service time during which an employee participated in the city's plan is required by *former* ORS 237.051(2) and ORS 238.680(2), which, as we have noted, provide that nothing in *former* ORS chapter 237 or ORS chapter 238, or any action taken under those enactments, "shall reduce or impair the benefits" that employees "would have received" under a preintegration retirement system, had integration not occurred. We note that, by the same token, if the city's own plan had included an unused sick leave benefit to which petitioner had been entitled, those statutes would have required PERB to grant him credit for preintegration unused sick leave accumulated thereunder. Petitioner apparently does not rely on such an entitlement.

Finally, we note that paragraph 10 of the integration contract provides that the Data Center will furnish PERB

---

[3] The integration provisions in both *former* ORS chapter 237 and current ORS chapter 238 demonstrate that the legislature is capable of employing the conditional tense. Under *former* ORS 237.051(2) and ORS 238.680(2), integration of an existing retirement system into PERS may not reduce or impair the benefits that employees "would have received" absent integration.

with preintegration employee information such as employees' salary histories, years of service, member account balances, and "other such information deemed to be necessary by the Board to integrate the previous plan into PERS." Although that paragraph includes a catchall category that arguably could include accumulated unused sick leave, it does not expressly mention that type of leave. Because unused sick leave can increase an employee's salary for benefit calculation purposes, the omission of that important factor from paragraph 1 marginally suggests that the parties to the contract did not intend to carry over previously accumulated leave, if any.

The dissent contends that, under our construction of the applicable statutes and the integration contract, paragraph 6 becomes a redundancy; if the statute itself establishes the availability of the benefit, it argues, there is no purpose in addressing the point in the integration agreement. It is, however, not remarkable for public contracts to expressly refer to statutory requirements. *See, e.g.*, ORS 279C.830(1)(c) (requiring public improvement contracts to "contain a provision that the workers shall be paid not less than the specified minimum hourly rate of wage in accordance with" specified statutes).

■    Aside from that, it is not all that clear to us that our reading of paragraph 6 does, in fact, render any portion of it unnecessary. That is because, under *former* ORS 237.153(1)(a) and ORS 238.350(1)(c), members of PERS are entitled to the unused sick leave enhancement of their retirement benefits only if their participating employers so request. *See former* ORS 237.153(1)(a) ("Upon the request by a public employer that its employees be compensated for accumulated unused sick leave * * *."); ORS 238.350(1)(a) (same). Paragraph 6 reasonably can be understood to document the specific intention to confer that benefit upon integration of the city's plan into PERS.

In any event, even assuming that our reading of paragraph 6 in some sense renders it redundant, it is not uncommon to confront a choice between an interpretation of a

legally significant instrument that merely renders its wording redundant and one that makes that wording mean something other than what it plainly says. In such cases, the courts consistently opt for the former over the latter. *Cf. S-W Floor Cover Shop v. Natl. Council on Comp Ins.*, 318 Or 614, 630-31, 872 P2d 1 (1994) (stating that, when faced with a choice of an interpretation that renders wording redundant and an interpretation that requires the court to omit what has been included in a statute, the court chooses the former); *State v. Stamper*, 197 Or App 413, 427, 106 P3d 172, *rev den,* 339 Or 230 (2005) ("In our judgment, concluding that the legislature merely said more than it needed to is far less offensive to legislative prerogative than holding that the legislature did not mean what it said.").

The dissent also contends that PERB's reading of paragraph 6 fatally inserts wording into the statute that the legislature did not include. ORS 174.010. We do not understand the dissent's complaint in that regard. Our construction of ORS 238.350(1)(c) adds nothing to the statute, which says in part that "accumulated unused sick leave with pay includes unused sick leave with pay accumulated by an active member of the system while in the service of any public employer participating in the system" that has requested that benefit. We have concluded that the significance of that wording is that the sick leave must have been accumulated "by an active member of the system." We do not see how that reading adds any words to the statute. On the other hand, petitioner's and the dissent's reading of the statute to apply to a person who is merely a member *at the time of separation* from service is difficult to reconcile with the wording of the statute, which says nothing of the sort.

Finally, the dissent complains that our interpretation of paragraph 6 is different from the one that PERB adopted in its original order. Regardless of PERB's earlier arguments about paragraph 6 or ORS 238.350, however, we are obliged to arrive at the correct interpretation of both, not merely to select the least incorrect interpretation from among those proposed by the parties. To the extent that we conclude that earlier PERB interpretations were incorrect, the appropriate remedy is to remand for reconsideration, not

to refuse to determine the correct interpretation simply because PERB did not think of it earlier.

■　In summary, because paragraph 6 of the integration contract at issue in this case incorporates *former* ORS 237.153 (now ORS 238.350), we determine the meaning and effect of the provision in part by construing the statute as a matter of law. We conclude that, consistently with the text and context of that statute, petitioner is entitled to credit for unused sick leave only to the extent that such leave was accumulated while he was an employee member or active member of PERS itself and that, under related PERS statutes—including the integration statutes—he "bec[a]me" an active member only upon integration. Other aspects of paragraph 6 do not vitiate that conclusion.

Here, as previously described, PERB withheld credit for unused sick leave accumulated by petitioner while he was not participating in the city's retirement plan but granted him credit for unused sick leave accumulated while he was participating in that plan but before integration. It therefore is apparent that PERB erroneously interpreted and applied *former* ORS 237.153 and ORS 238.350; alternatively, its order lacks substantial reason justifying its grant of credit for the latter category of unused sick leave. We remand the order for reconsideration.

Remanded for reconsideration.

**SCHUMAN, J.,** dissenting.

After a contested case hearing, the Public Employees Retirement Board (PERB) issued an order denying petitioner credit for unused sick leave that he had accumulated while he worked for a City of Salem agency but was not participating in the city's retirement plan. Petitioner contends that PERB's order cannot be reconciled with the contract that integrated the city's retirement plan into the Public Employees Retirement System (PERS). Unlike the majority, I agree with petitioner. I would therefore reverse and remand.

Under *former* ORS 237.051(1)(b) (1989), petitioner's benefits are defined by the contract between PERB and the Data Center. That statute provides that PERB "[m]ay upon such terms as are set forth in a contract between the board

and the employer," integrate a public employer's non-PERS pension system into PERS. *See also Stovall v. State of Oregon*, 324 Or 92, 109-10, 922 P2d 646 (1996) (*former* ORS 237.051(1)(b) does not limit the terms to which the parties to an integration contract may agree). The integration contract, in turn, refers back to the PERS statutes. It provides, in part:

> "(1)   Effective January 1, 1991, the Data Center will begin participation in PERS for all eligible Data Center employees * * *. All employees of the Data Center who participated in the previously established retirement plan as of January 1, 1991, shall be covered by and begin participation in PERS and shall have all rights, benefits and obligations provided by ORS 237.001 through ORS 237.320[, the statutes then governing PERS].
>
> "* * * * *
>
> "(6)   The Data Center extends the use of accumulated unused sick leave to increase benefits in accordance with ORS 237.153 for those persons receiving a benefit under ORS 237.001 through ORS 237.320, for all employees."

*Former* ORS 237.153 (1989),[1] in turn, provided in paragraph (1)(a) that a public employer may request that its employees receive increased retirement benefits based on their accumulated unused sick leave with pay[2] and, in paragraph (1)(c), defined "accumulated unused sick leave" as follows:

> "[A]ccumulated unused sick leave with pay includes unused sick leave with pay accumulated by an employee member of the system while in the service of any public employer participating in the system that has the request described in

---

[1] *Former* ORS 237.153 (1989) has been renumbered as ORS 238.350, and paragraph (1)(c) has been amended. The amendment changed the phrase "employee member" in paragraph (1)(c) to "active member." Or Laws 1993, ch 177, § 17. As explained below, I refer to that particular statute in its unamended form, and, for that reason, I use its 1989 codification number.

[2] *Former* ORS 237.153(1)(a) provided:

> "Upon the request by a public employer that its employees be compensated for accumulated unused sick leave with pay in the form of increased retirement benefits upon service or disability retirement, the board shall establish a procedure for adding to the gross amount of salary used in determining final average salary the monetary value of one-half of the accumulated unused sick leave with pay of each retiring employee of the requesting public employer and shall establish benefits of the retiring employee on the basis of a final average salary reflecting that addition."

paragraph (a) of this subsection in effect at the time of the member's separation from the service of the employer * * *."

Neither the contract nor the statute demonstrates, shall we say, exemplary drafting skills. Both need explication.

Because *former* ORS 237.051(1)(b) mandates that petitioner's benefits are defined by the integration contract, I begin with that document, in particular with paragraph 6. I decipher it as follows: The subject of the sentence is "The Data Center." The verb is "extends." The direct object phrase—that which is extended—is "the use of accumulated unused sick leave [in order] to increase benefits," which, for convenience, I refer to hereafter as "sick leave benefits." The indirect object phrase—that *to which or for which* the sick leave benefits are extended—is "all employees." Thus, the grammatical core of the sentence is: The Data Center extends sick leave benefits to all employees. The remaining words, "in accordance with ORS 237.153 for those persons receiving a benefit under [the statutes governing PERS]," is an adverbial phrase modifying the verb "extends." The phrase describes *how*, or *under what circumstances*, the benefits are to be extended: they are to be extended in the same way that *former* ORS 237.153 extends sick leave benefits to persons covered by PERS. Thus, to paraphrase, paragraph 6 of the contract between PERB and the Data Center provides: The Data Center will henceforth allow all of its employees to use their accumulated unused sick leave in order to increase their retirement benefits. They can do so on the same terms that apply to PERS-covered employees who increase their retirement benefits by using accumulated unused sick leave. Those terms are spelled out in *former* ORS 237.153.

PERB argues that, under paragraph 6, a Data Center employee is entitled to credit only for unused sick leave accumulated after integration. That is so, PERB maintains, because paragraph 6 incorporates *former* ORS 237.153, and the text of that statute clearly precludes petitioner from receiving the sick leave benefit. PERB points out that paragraph (1)(c) of that statute, in defining "accumulated unused sick leave," limits the availability of the benefit in several respects. First, the unused sick leave must be accumulated by a "member of the system." Second,

the unused sick leave must be accumulated "while in the service of any public employer participating in the system." Third, that employer, at the time of the employee's retirement, must have made, and not withdrawn, a request to allow its employees to use their accumulated sick leave to increase benefits.

PERB acknowledges that petitioner and his employer meet the third criterion, but argues that they do not meet the first two. "The system" in *former* ORS 237.153, PERB argues, refers to PERS, and petitioner was not a PERS member when he accumulated the disputed, preintegration sick leave, nor was the Data Center a "public employer participating in the system" at that time. Thus, according to PERB, paragraph 1 of the integration contract brought Data System employees who were members of its retirement plan into the PERS retirement plan, with all of the benefits provided by the PERS statutes. One of those statutes, *former* ORS 237.153, gave PERS employers the option of extending sick leave benefits. In paragraph 6, the Data Center exercised that option. By indicating that the sick leave benefit was extended "in accordance with ORS 237.153," the parties necessarily intended that the extension apply only to unused sick leave accumulated going forward, that is, after the employees, by virtue of the integration contract, became "member[s] of" PERS working for an "employer participating in" PERS.

Petitioner suggests a different analysis of the relationship between the integration contract and *former* ORS 237.153(1)(c). According to petitioner, the phrase "in accordance with ORS 237.153 for those persons receiving a benefit under [the PERS statutes]" in paragraph 6 extends the sick leave benefit to all Data System employees on the same terms that are applicable to PERS members to whom the requirements of *former* ORS 237.153 apply. Thus, the question of petitioner's eligibility to receive credit for unused sick leave accumulated while petitioner worked for the Data Center but did not participate in the city's retirement plan would be treated as though it were the question whether a PERS member working for a PERS participating employer would receive credit for unused sick leave accumulated while

the PERS member worked for a PERS participating employer, but did not contribute to PERS.

PERB's interpretation of the statute in the context of the integration contract, although a cogent attempt to find order in chaos, presents several problems. First, if PERB is correct, then paragraph 6 of the integration contract is unnecessary. That paragraph declares, under PERB's reading, that, as of January 1, 1991, the day the integration contract becomes effective, all Data Center employees will receive credit for sick leave they accumulate going forward, in accordance with the PERS statutes. But paragraph 1 declares, in more general terms, that, "Effective January 1, 1991, the Data Center will begin participation in PERS for all eligible Data Center employees." Thus, according to PERB's analysis, paragraph 6 adds nothing. PERB argues that paragraph 6 *does* add something: it indicates that the Data Center has formally requested sick leave benefits for its employees after integration, as required by *former* ORS 237.153(1)(a) (set out above at note 2). However, that reading cannot be reconciled with the actual words of paragraph 6; those words are the statement of a contract term, not notice that some request has already been made. The request to confer unused accumulated sick leave benefits is logically and legally *prior to* the contract, and must have occurred elsewhere. Thus, PERB's interpretation adds nothing that is not already stated in paragraph 1, while petitioner's interpretation adds a benefit that paragraph 1 does not: credit for preintegration sick leave.

A second problem with PERB's interpretation of *former* ORS 237.153 is that, contrary to ORS 174.010, it adds words that the legislature omitted: "at the time the sick leave was accumulated." Petitioner's analysis, on the other hand, does not insert words—it merely applies a phrase already in the statute ("at the time of the member's separation") to words that are already there. To clarify, the statute defines "accumulated unused sick leave" as follows:

> "[A]ccumulated unused sick leave with pay includes unused sick leave with pay accumulated by an employee member of the system while in the service of any public employer participating in the system that has the request described in

paragraph (a) [to compensate its employees for accumulated unused sick leave] in effect at the time of the member's separation from the service of the employer * * *."

PERB's interpretation would require the following paraphrase of the statute with added words in italics:

"[A]ccumulated unused sick leave with pay includes unused sick leave with pay accumulated by *a person who, at the time of accumulation, was* an employee member of the system while in the service of any public employer *that, at the time of accumulation, was* participating in the system that has the request described in paragraph (a) of this subsection in effect at the time of the member's separation from the service of the employer * * *."

Petitioner's paraphrase, on the other hand, reads as follows:

"[A]ccumulated unused sick leave with pay includes unused sick leave with pay accumulated by *a person who at the time of separation from the service of the employer is* an employee member of the system while in the service of any public employer *that at the time of separation is* participating in the system that has the request described in paragraph (a) of this subsection in effect at the time of the member's separation from the service of the employer * * *."

Third, PERB's interpretation appears for the first time on judicial review, and it is inconsistent with the theory that it presented below. Under PERB's interpretation on appeal, petitioner should not have received credit for *any* sick leave that he accumulated before integration, because during that time he was not a PERS member and he was working for a non-PERS employer. That is not the position that PERB took when it audited petitioner's account, when it presented its case before the ALJ, or in its final order. During the entire administrative process, PERB's position was that petitioner *was* entitled to the hours that he accumulated, before integration, when he was contributing to the city's plan. In its final order, PERB framed the issue, and resolved it, as follows:

"Appellant contends he was an 'active member' of the system in the service of a participating public employer. Appellant cites to the definition of 'active member' * * * set forth [i]n ORS 238.005(12). He further asserts that in construing

the statute, PERS erroneously equates the term 'active member' with the concept of 'creditable service.'

"* * * * *

"Appellant was not an 'active member' for purposes of ORS 238.005(12)(b) *during the time he had opted out of the City of Salem's pension plan.* An 'active member' is one who 'is presently employed by a participating employer in a qualifying position.' ORS 238.005(12)(b). *During the time Appellant opted out of the City of Salem's pension plan,* the City of Salem was not making contributions to its retirement system related to Appellant, nor was Appellant making any contributions.

"* * * * *

"Because Appellant opted out of the City's plan from 1974 until 1989, *that period* is not counted as creditable service for PERS purposes, and for that same reason Appellant cannot be considered to have been an active member of PERS *during that time * * *.*"

(Footnotes omitted; emphasis added.) PERB *assumed* that petitioner was entitled to credit for sick leave that he had accumulated when he was employed by the Data Center and participating in its plan before integration. Its argument in the order on review is that petitioner *is* entitled to credit for sick leave accumulated while he was an active member (*i.e.*, a paying participant) of the city's preintegration plan, but is *not* entitled to credit for those preintegration periods during which he was *not* an active member. That assumption is consistent with petitioner's interpretation of *former* ORS 237.153, including his interpretation of paragraph 6 of the integration contract, and not with the interpretation that PERB advances on judicial review.

PERB presents the argument that it made below—that petitioner is entitled to credit for the sick leave he accumulated while an active member of the city's preintegration retirement plan, but cannot claim credit for periods he was *not* an active member of the city's preintegration plan—as an alternative argument on judicial review. Having rejected PERB's primary argument, I now turn to that alternative argument.

As noted above, PERB's argument below incorporated the interpretation of paragraph 6 that petitioner proposed there and proposes again on judicial review. PERB, in other words, argued (and argues again, as a fall-back) that the integration contract extended the sick leave benefit only to those who, if they had been PERS members during their employment with the Data Center and the Data Center had been a PERS participant employer, would have qualified for it under PERS statutes. The relevant PERS statutes include *former* ORS 237.153, under which "accumulated unused sick leave with pay" is defined as pay accumulated by a "member." *Former* ORS 237.011 (1989), in turn, provides,

> "No person may become a member of the system unless that person is in the service of a public employer and has completed six months' service uninterrupted by more than 30 consecutive working days during the six months' period. Every employee of a participating employer shall become a member of the system at the beginning of the first full pay period of the employee following the six months' period."

Membership terminates only if "during any absence from * * * service the employee withdraws the amount credited to the account of the employee" or if "the employee is absent from the service of all employers participating in the system for a total of more than five consecutive years." *Former* ORS 237.109 (1989). Under the undisputed facts, petitioner was a member. By virtue of paragraph 6 of the integration contract, the Data Center is considered a "participating employer." Nothing in the PERS statutes that are incorporated into the integration contract would have authorized the exclusion of sick leave accumulated by a member when the member was not contributing. It is true, as PERB argues, that *former* ORS 237.071(1) (1989) obligated members to contribute to PERS. That obligation, however, was a requirement of membership, and not part of its definition.[3] Indeed, petitioner had a retirement account with the Data Center during the time that he

---

[3] The analysis in this paragraph presumes that paragraph 6 incorporates *former* ORS 237.153 and other PERS statutes as they existed when the integration contract was executed in 1991. If I were to presume that the contracting parties intended to incorporate amendments to those statutes, then the relevant statutes are the ones in effect when petitioner retired in 2001. Under those statutes, the sick leave benefit was extended in accordance with ORS 238.350. Under that statute, unused accumulated sick leave is that which is accumulated by an "active member." ORS 238.350(1)(c). A "member" is a "person who has established

did not contribute. He might be said to have been a delinquent member, but not a nonmember.

In sum, the contract between the Data Center and PERB extended accumulated unused sick leave benefits to all Data Center employees who would have been entitled under the relevant PERS statutes to the benefits if the Data Center had been a PERS participating employer when the leave was accumulated. The relevant statutes extend the benefits to "employee member[s]." Petitioner was such an employee when he accumulated the leave, even when he was not contributing to the city's retirement plan. He therefore should have received credit for all 2,118 hours of accumulated unused sick leave. I therefore dissent.

---

membership in the system" by working for a participating employer for six months, and whose membership has not been terminated by withdrawal of his account or unemployed by a participating employer for five years. ORS 238.005(12)(a); ORS 238.015(1); ORS 238.095. An "active" member is one who has completed six months of service for the participating employer. ORS 238.005(12)(b). No statute specifies that a member who is not contributing is not an active member.